UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANITA CLINARD                                                                                       PLAINTIFF

v.                                          No. 5:20-CV-05188

WASHINGTON REGIONAL MEDICAL CENTER                                        DEFENDANT

## OPINION AND ORDER

Before the Court is Defendant Washington Regional Medical Center's ("WRMC") motion (Doc. 29) for summary judgment, brief (Doc. 31) in support, and statement of facts (Doc. 32). The motion is also supported by several sealed exhibits (Doc. 30). Plaintiff Anita Clinard filed a response (Doc. 35) and brief (Doc. 36) in opposition. WRMC filed a reply (Doc. 37). For the reasons set forth below, the motion will be GRANTED.

**I.    Background**

This action arises out of Clinard's employment as a Registered Nurse at Walker Heart Clinic, owned and operated by WRMC. Clinard's direct supervisor is Shelley Slape and Clinard works with Dr. Boris Bogomilov. While employed with WRMC, Clinard had two interactions with Dr. Soliman Soliman which she reported as sexual harassment. On the first occasion, which occurred on June 28, 2017, Dr. Soliman inquired about Clinard's multinodular thyroid. Dr. Soliman then approached Clinard and palpated her thyroid, rubbed her face, and leaned in close and whispered, "You are so beautiful." (Doc. 36, p. 3). Clinard pushed Dr. Soliman away and the incident ended. The second incident occurred on January 19, 2019. During this incident, Clinard was charting in the hospital hallway and Dr. Soliman approached her and began rubbing her shoulders while telling her how he respects and admires her.

On January 24, 2019, Clinard reported the two incidents to WRMC's Human Resources

1

Director. WRMC investigated Clinard's reports and determined Clinard's claims could not be substantiated. However, because WRMC determined Clinard's claims were colorable, Dr. Soliman was suspended for a week without pay, made ineligible for certain benefits, required to attend, at his own cost, a boundaries course aimed at medical professionals at Vanderbilt University, required to sign and date each page of WRMC's sexual harassment policy, and was informed that should a colorable allegation of sexual harassment be made against him again, he would be immediately terminated. No report of sexual harassment has been made against Dr. Soliman since these actions were taken.

After the investigation into Clinard's 2019 report was closed, Clinard continued to pursue action against Dr. Soliman and intentionally decided not to work weekend shifts when she knew Dr. Soliman would be on call. In February 2019 Clinard filed a complaint against Dr. Soliman with the Arkansas State Medical Board. The medical board held a hearing but took no licensure action. The Physician's Health Committee of the Arkansas State Medical Board was directed to monitor Dr. Soliman, which included the submission of confidential reports from WRMC employees concerning their interactions with Dr. Soliman. The Physician's Health Committee's completed its monitoring, however, neither party has provided any type of incident report in the record.

On May 6, 2020, Clinard approached a member of the WRMC board of directors while the member was at a clinic for a medical appointment to complain of sexual harassment by Dr. Soliman. After this interaction, WRMC hired outside legal counsel to conduct an investigation. The investigation concluded that there had been no new conduct on the part of Dr. Soliman since disciplinary action was taken against him after Clinard's report in 2019, Clinard's 2020 complaint reiterated the 2019 allegations, WRMC's investigation and response in 2020 was appropriate, and

the allegations would likely not implicate applicable law.

Clinard remains employed for WRMC in the same position with the same job duties. Further, Clinard has generally received annual raises, has the same benefits as other WRMC employees, receives bonuses awarded to all employees, and continues to receive excellent to good marks on her annual evaluations.

On June 18, 2019, Clinard filed a charge of discrimination with the EEOC complaining of sexual harassment by Dr. Soliman. The EEOC investigation concluded that WRMC "took immediate corrective action once the harassment was reported, and the sexual conduct did not re-occur." (Doc. 29-29). The EEOC issued Clinard a right to sue letter on August 24, 2020. On October 27, 2020, Clinard filed the instant action alleging gender discrimination, hostile work environment sexual harassment, constructive discharge, conspiracy to deprive her of equal protection in violation of 42 U.S.C. § 1985,[1] discrimination and retaliation in violation of the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq.*, and negligent hiring and retention. WRMC has filed a motion seeking summary judgment on all claims.

## II. Legal Standard

On a motion for summary judgment the burden is on the moving party to show that there

---

[1] Clinard attempts in her response to "nonsuit" her § 1985 claims. At this stage of litigation, Federal Rule of Civil Procedure 41(a)(1)(A)(i) does not allow Clinard to voluntarily dismiss this claim without a court order. Instead, Rule 41(a)(2) allows for dismissal "only by court order, on terms that the court considers proper." Assuming the Court were to construe the one line in Clinard's response addressing her § 1985 claim as a motion to dismiss, the motion would be denied. Clinard identifies no basis for voluntary dismissal, leading the Court to believe "[t]he only possible basis for the dismissal without prejudice appears to be that plaintiff fear[s] the trial court might grant the motion" that dismisses her § 1985 claim on the merits. *Ford Motor Credit Co. v. S & S Recovery, Inc.*, 627 F.2d 158, 159 (8th Cir. 1980). If Clinard is motivated by this fear, she is correct. As addressed later in this opinion, Clinard cannot prevail on her claim as a matter of law, and "[t]he discontinuance of the case in such circumstances . . . deprive[s the defendant] of the benefit of a decision in its favor." *Int'l Shoe Co. v. Cool*, 154 F.2d 778, 780 (8th Cir. 1946).

is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant has met its burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To establish a genuine issue of material fact, the nonmoving party may not rely on "conclusory statements in his affidavit" but must "point to evidence in the record sufficient to raise a genuine issue for trial." *Jeseritz v. Potter*, 282 F.3d 542, 545-46 (8th Cir. 2002) (quoting *Mathews v. Trilogy Comm'ns, Inc.*, 143 F.3d 1160, 1164 (8th Cir. 1998)); *see also Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872-73 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor.")

**III.  Analysis**

    **A.  Gender Discrimination**

On this motion there is no direct evidence of discrimination and the *McDonnell Douglas* framework applies. *Shaffer v. Potter*, 499 F.3d 900, 904 (8th Cir. 2007) (quoting *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 965 (8th Cir. 2006)) ("Direct evidence includes 'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor.'"). Under the *McDonnell Douglas* burden-shifting framework, the plaintiff has the burden to establish a prima facie case of discrimination. *Shaffer*, 499 F.3d at 904-05. A plaintiff meets

this burden by showing: "(1) she was a member of a protected class, (2) she was qualified for her job, (3) she suffered an adverse employment action, and (4) there are facts that give rise to an inference of gender discrimination." *Id.* at 905 (citing *Holland v. Sam's Club*, 487 F.3d 641, 644-45 (8th Cir. 2007); *Rodgers v. U.S. Bank*, 417 F.3d 845, 850 (8th Cir. 2005)). "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citing *Wilkie v. Dep't of Health & Hum. Servs.*, 638 F.3d 944, 955 (8th Cir. 2011)).

It is undisputed that Clinard is a member of a protected class and is qualified for her job. However, Clinard has suffered no adverse employment action. She continues to work in her same position, with the same job duties, generally receives annual raises, has the same benefits, is awarded the same bonuses as other WRMC employees, and receives favorable annual evaluations. Though Clinard claims that she chooses not to take weekend shifts when she knows Dr. Soliman will be working, personal choices made by the employee will not be imputed as adverse employment action taken by the employer. *See id.* (explaining that an employee's decision to take sick leave due to work-related stress from discrimination and harassment was not adverse employment action). Because Clinard has suffered no adverse employment action, summary judgment will be granted on her gender discrimination claim.

    **B.**    **Constructive Discharge**

"Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit." *Baker v. John Morrell & Co.*, 382 F.3d 816, 829 (8th Cir. 2004); *see also Jackman*, 728 F.3d at 805 (holding that an employee was

not constructively discharged when she voluntarily chose to take sick leave due to work-related stress from discrimination and harassment but remained employed in her same position). "To prove a case of constructive discharge, a plaintiff must show (1) a reasonable person in [her] situation would find the working conditions intolerable, and (2) the employer intended to force [her] to quit." *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007) (citing *Tatum v. Ark. Dep't of Health*, 411 F.3d 955, 960 (8th Cir. 2005)). "An employee must, however, grant her employer a reasonable opportunity to correct the intolerable condition before she terminates her employment." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 534 (8th Cir. 2008) (quoting *Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 724 (8th Cir. 2003)) (alterations adopted).

Here, Clinard was not forced to quit her employment; she is in fact still employed in her same position. In addition, after Clinard reported Dr. Soliman's conduct, WRMC took steps to correct his behavior by issuing strong sanctions against him, and no reports of any misconduct have been made by Clinard or any other WRMC employee since. Therefore, Clinard was not constructively discharged, and summary judgment will be granted on this claim.

    **C.**    **Hostile Work Environment Sexual Harassment**

As a preliminary matter, Clinard cannot establish a claim for quid pro quo sexual harassment because Dr. Soliman was not her supervisor and, as discussed above, no tangible employment action was taken against her. *Henthorn v. Capitol Commc'ns, Inc.*, 359 F.3d 1021, 1026-27 (8th Cir. 2004) ("Sexual harassment is quid pro quo if a tangible employment action follows the employee's refusals to submit to a supervisor's sexual demands."); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998) ("When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes

that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII."). Therefore, Clinard's sexual harassment claim will be analyzed under the hostile work environment framework.

> To establish a prima facie claim of hostile work environment by non-supervisory co-workers, a plaintiff must show (1) that she belongs to a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on her membership in a protected group; (4) that the harassment affected a term, condition, or privilege of her employment by creating a hostile work environment; and (5) that the employer knew or should have known about the harassment and failed to take proper remedial action.

*Wilkie*, 638 F.3d at 952 (quoting *Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010)).

"The standard for demonstrating a hostile work environment on the basis of sexual harassment is a demanding one." *Cross*, 615 F.3d at 981 (citing *LeGrand v. Area Res. for Cmty. & Hum. Servs.*, 394 F.3d 1098, 1101 (8th Cir. 2005)). "Title VII does not prohibit all verbal or physical harassment and [it] is not a general civility code for the American workplace." *Id.* (quoting *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006)). "Actionable conduct must therefore be extreme rather than merely rude or unpleasant." *Id.* (citing *LeGrand*, 394 F.3d at 1101). "In determining whether a plaintiff has demonstrated a hostile work environment, we consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the plaintiff's job performance." *Id.* "More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment." *LeGrand*, 394 F.3d at 1101 (internal quotations omitted).

Here, Clinard only reported two instances of sexual harassment to WRMC. However, she claims that after the 2019 report Dr. Soliman unnecessarily walked in front of her desk, entered

7

the break room when she was alone, gave her dirty looks, and made negative statements about her to co-workers. Under Eighth Circuit precedent, these actions are not sufficiently severe or pervasive to meet the threshold of what would be considered a hostile work environment. *See, e.g.*, *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 931-35 (8th Cir. 2002) (plaintiff failed to show severe or pervasive sexual harassment based on five harassing incidents over a two-year period: a proposition for a relationship; unnecessary touching of the plaintiff's hand, a request the plaintiff sketch a sexually objectionable planter; the posting of a "Man Hater's Club" poster featuring the plaintiff; and a request the plaintiff "type the He-Men Women Haters beliefs"); *LeGrand*, 394 F.3d at 1100-02 (when a co-worker asked the plaintiff to watch pornographic movies with him, requested sexual favors, kissed him, "grabbed his butt," reached for his genitals, and gripped his thigh, the conduct was not sufficiently severe or pervasive to rise to the level of a hostile work environment); *Anderson v. Fam. Dollar Stores of Ark., Inc.*, 579 F.3d 858, 860-62 (8th Cir. 2009) (when the district manager told plaintiff she should be in bed with him with a Mai Tai, called her "baby doll" and "honey," told her that how far she went in the company was up to him, cupped her chin, and rubbed her shoulders, this action was not sufficiently severe or pervasive to constitute a hostile work environment); *Ottman v. City of Indep.*, 341 F.3d 751, 760 (8th Cir. 2003) (concluding the district court erred in finding a triable issue for the jury where the conduct consisted of belittling and sexist remarks on almost a daily basis); *Alagna v. Smithville R–II Sch. Dist.*, 324 F.3d 975, 980 (8th Cir. 2003) (finding to be inappropriate but not actionable conduct that involved frequent calls to the plaintiff's home, regular visits to her office, bestowing gifts, touching the plaintiff's arm, and frequent expressions of "I love you"). *But see Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999) (when, over the course of some two years, an employee suffered verbal abuse interlaced with sexual and racial epithets almost every other day, rude sexual

8

gestures were frequently made towards her, sexual insults were written on the walls of the company restroom, acts of vandalism occurred in her work area, and a picture of a naked man, dead animals, threatening notes, foul-smelling materials, and debris were directed to her area, a reasonable factfinder could conclude that the harassment was sufficiently severe or pervasive to constitute a hostile work environment).

In addition, the Eighth Circuit has held that "an employer is not liable [for acts of sexual harassment in the workplace] if it takes prompt remedial action that is reasonably calculated to stop the harassment." *Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1123 (8th Cir. 2007) (citing *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999)).  Here, after WRMC was notified by Clinard of the sexual harassment, WRMC took prompt remedial action.  Clinard's claims were immediately investigated, sanctions were levied against Dr. Soliman, and no incident of harassment has been reported since.  When it later became clear that Clinard was unsatisfied with the result of the investigation, WRMC hired outside counsel to investigate the matter.  That investigation concluded that there had been no new conduct on the part of Dr. Soliman and found no deficiency in WRMC's earlier, internal investigation and response.  "Thus, management took appropriate action to end the alleged sexual harassment." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 968 (8th Cir. 1999) (holding that appropriate action was taken when no incidents of harassment were repeated after the offending employee was sanctioned).

Because the sexual harassment in this case was not sufficiently severe or pervasive to constitute a hostile work environment and because WRMC took prompt and effective remedial action following Clinard's report, summary judgment will be granted on the hostile work environment claim.

### D. Section 1985

The § 1985 claim alleged in Plaintiff's complaint is premised on a conspiracy between Dr. Soliman and others at WRMC to deprive Clinard of equal protection and privileges and immunities secured by the 14th Amendment. (Doc. 2, p. 32, ¶ 61). Because Dr. Soliman works for WRMC, Clinard's § 1985 claim "is barred under the intracorporate conspiracy doctrine, which shields agents of a single corporation and employees of a single government department acting within the scope of their employment from constituting a conspiracy under § 1985." *Johnson v. Vilsack*, 833 F.3d 948, 958 (8th Cir. 2016).

### E. State Law Claims

When a court exercises supplemental jurisdiction over state law claims and grants pretrial dismissal of all claims over which it is exercising original jurisdiction, it may decline to exercise its supplemental jurisdiction and remand or dismiss the remaining claims without prejudice. 28 U.S.C. § 1367(c)(3); *Keating v. Neb. Pub. Power Dist.*, 660 F.3d 1014, 1018-19 (8th Cir. 2011). However, where a court exercises supplemental jurisdiction over claims that involve "well-settled principles of state law" into which a substantial amount of time and judicial resources have been invested, it may choose to retain jurisdiction without abusing its discretion. *Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1141 (8th Cir. 2014).

#### 1. Arkansas Civil Rights Act

"In construing the [ACRA], [Arkansas courts] may be guided by state and federal decisions interpreting the federal Civil Rights Act." *Harmon v. Payne*, 592 S.W.3d 619, 623 (Ark. 2020)). Because summary judgment was granted on Clinard's claim for gender discrimination under Title VII, and because her ACRA gender discrimination claim relies on identical facts and legal principles, summary judgment will be granted on Clinard's discrimination claim under the ACRA.

As for Clinard's retaliation claim, "[t]o establish a prima facie case of retaliation, [Clinard] must show: (1) [she] engaged in protected activity; (2) [she] suffered an adverse employment action; and (3) a causal connection exists between [her] protected activity and the adverse employment action." *Gipson v. Dassault Falcon Jet Corp*, 983 F.3d 377, 381-82 (8th Cir. 2020) (citing *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006)). As discussed above, Clinard has suffered no adverse employment action. Therefore, summary judgment will be granted on the ACRA retaliation claim.

### 2. Negligent Hiring and Retention

Clinard claims that WRMC was negligent in hiring and retaining Dr. Soliman in light of past reported instances of sexual harassment, one of which was reported in 2011 prior to his employment with WRMC, and another of which was reported in 2015 during his tenure with WRMC.

Under Arkansas law, employers are directly liable for the negligent hiring or "retention of employees when third parties are injured as a result of the tortious acts of those employees." *Saine v. Comcast Cablevision of Ark., Inc.*, 126 S.W.3d 339, 342 (Ark. 2003) (citations omitted). The facts cited in the record reveal that the bulk of Clinard's claims sound in discrimination, not tort law. In addition, to succeed on claims for negligent hiring or supervision, Clinard would need to prove that WRMC "knew or, through the exercise of ordinary care, should have known, that [Dr. Soliman's] conduct would subject third parties to an unreasonable risk of harm." *Paulino v. QHG of Springdale, Inc.*, 386 S.W.3d 462, 469 (Ark. 2012). Though an employee of Dr. Soliman's former hospital did obtain an Order of Protection against him in 2011, this order was voluntarily vacated 7 months later. Dr. Soliman did not disclose this to WRMC on his employment application, and it was only after his employment agreement was finalized WRMC received a letter

from Dr. Soliman's previous employer informing WRMC of the matter. The letter however also confirmed that Dr. Soliman had active staff membership and clinical privileges, that while the order was in effect Dr. Soliman voluntarily agreed not to practice at the medical center, he had handled the matter professionally, and no formal action was taken against him. His former employer also informed WRMC that it had intended to recommend him for reappointment in 2012 should he wish to continue practicing in Illinois. Furthermore, the record available to WRMC revealed only that Dr. Soliman had a personal relationship with the woman involved, and nothing indicated that the restraining order involved sexual harassment. In light of this, WRMC exercised ordinary care and no reasonable juror could conclude that WRMC should have been aware that hiring Dr. Soliman posed an unreasonable risk of harm to any third party. To hold otherwise would open the door to liability for any time an employer hired an employee with any complaint against him or her.

As for the negligent retention claim, in 2015 a nurse employed by WRMC filed a sexual harassment claim against Dr. Soliman. WRMC investigated this complaint. Dr. Soliman admitted to the allegations and claimed that he misunderstood the nature of his relationship with the complaining nurse. At the conclusion of the investigation Dr. Soliman was made to read, sign, and date each page of WRMC's sexual harassment policy and was also informed that if a substantiated complaint of sexual harassment was made against him in the future, it would result in immediate termination. (Clinard's 2019 claims could not be substantiated by WRMC, but after her complaint Dr. Soliman has now been informed that if any *colorable* complaint of sexual harassment is made against him he will be terminated.) Considering the remedial action taken against Dr. Soliman to protect employees from acts of sexual harassment after the 2015 complaint, and in light of Dr. Soliman's admission and explanation and the four-year timespan between the

2015 complaint and Clinard's complaint (during which no claim of sexual harassment was made against Dr. Soliman), WRMC had no reason to know that retaining Dr. Soliman would subject third parties to an unreasonable risk of harm. No reasonable juror could conclude that WRMC was negligent in retaining Dr. Soliman. Therefore, summary judgment will be granted on the negligent hiring and retention claims.

### IV. Conclusion

IT IS THERFORE ORDERED that WRMC's motion (Doc. 29) for summary judgment is GRANTED. Plaintiff's claims are dismissed with prejudice. Judgment will be entered separately.

IT IS SO ORDERED this 13th day of October, 2021.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE